01

02

03

04

05

06

07

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

08 KIMBERLEY A. SMITH,                     )
                                          )   CASE NO. C09-1582-RSL
09          Plaintiff,                     )
                                          )
10     v.                                  )   REPORT AND RECOMMENDATION
                                          )   RE: SOCIAL SECURITY DISABILITY
11 MICHAEL J. ASTRUE, Commissioner         )   APPEAL
   of Social Security,                     )
12                                         )
            Defendant.                     )
13 _____ )

14          Plaintiff Kimberley Smith proceeds through counsel in her appeal of a final decision of

15  the Commissioner of the Social Security Administration (Commissioner).   The Commissioner

16  denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental

17  Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ).   Having

18  considered the ALJ's decision, the administrative record (AR), and all memoranda of record,

19  the Court recommends that this matter be REMANDED for further administrative proceedings.

20  / / /

21  / / /

22  / / /

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01                    **FACTS AND PROCEDURAL HISTORY**

02          Plaintiff was born on XXXX, 1961.[1]  She graduated from high school.  (AR 26.)

03  Plaintiff previously owned and managed a small retail business and worked briefly as a

04  bartender.   (AR 27, 30, 122.)

05          Plaintiff filed applications for DIB and SSI in June/July 2006.  (AR 110-16, 129.)   She

06  alleged disability beginning March 1, 2003 due to post-traumatic stress disorder (PTSD),

07  depression, and anxiety.  (AR 58, 110.)   Her applications were denied at the initial level and

08  on reconsideration, and she timely requested a hearing.

09          On March 9, 2009, ALJ Mattie Harvin-Woode held a hearing, taking testimony from

10  plaintiff and vocational expert Mark Harrington.  (AR 20-53.)   On April 10, 2009, the ALJ

11  issued a decision finding plaintiff not disabled.   (AR 8-19.)

12          Plaintiff timely appealed.   The Appeals Council denied plaintiff's request for review

13  on September 21, 2009 (AR 1-4), making the ALJ's decision the final decision of the

14  Commissioner.   Plaintiff appealed this final decision of the Commissioner to this Court.[2]

15                              **JURISDICTION**

16          The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

17                              **DISCUSSION**

18          The Commissioner follows a five-step sequential evaluation process for determining

19          ───────────────
20          1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil
    Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to
    the official policy on privacy adopted by the Judicial Conference of the United States.

21          2 Plaintiff's Opening Brief contains a lengthy Statement of Facts.   In fact, plaintiff does not commence
    the argument portion of her brief until page twelve.   The parties are reminded that such a recitation of the
22  facts is unnecessary and, in fact, is discouraged.   Rather, a discussion of the relevant facts and portions of the
    administrative record should be conducted in the context of specific assignments of error.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01  whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

02  must be determined whether the claimant is gainfully employed.   The ALJ found that plaintiff

03  did not engage in substantial gainful activity from her alleged onset date through her date last

04  insured, December 31, 2010.

05        At step two, it must be determined whether a claimant suffers from a severe impairment.

06  The ALJ found plaintiff's high blood pressure, anxiety disorder, PTSD, and bipolar disorder

07  severe.   He found other alleged impairments, such as migraines and symptoms associated with

08  mold exposure, not severe.

09        Step three asks whether a claimant's impairments meet or equal a listed impairment.

10  The ALJ concluded plaintiff did not have an impairment or combination of impairments that

11  met or medically equaled a listing.

12        If a claimant's impairments do not meet or equal a listing, the Commissioner must

13  assess residual functional capacity (RFC) and determine at step four whether the claimant has

14  demonstrated an inability to perform past relevant work.   The ALJ found plaintiff able to

15  perform a full range of work at all exertional levels, but with the nonexertional limitation to

16  unskilled work.   With this RFC, the ALJ found plaintiff unable to perform any past relevant

17  work.

18        If a claimant demonstrates an inability to perform past relevant work, the burden shifts

19  to the Commissioner to demonstrate at step five that the claimant retains the capacity to make

20  an adjustment to work that exists in significant levels in the national economy.   With the

21  assistance of the vocational expert, the ALJ found plaintiff able to perform other jobs, such as

22  work as a janitor or production assembler.

01   This Court's review of the ALJ's decision is limited to whether the decision is in

02   accordance with the law and the findings supported by substantial evidence in the record as a

03   whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

04   more than a scintilla, but less than a preponderance; it means such relevant evidence as a

05   reasonable mind might accept as adequate to support a conclusion.   *Magallanes v. Bowen*, 881

06   F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

07   supports the ALJ's decision, the Court must uphold that decision.   *Thomas v. Barnhart*, 278

08   F.3d 947, 954 (9th Cir. 2002).

09   Plaintiff argues that the ALJ erred in consideration of various medical opinions, in

10   assessing her testimony and RFC, and in reaching the conclusion at step five.   She requests

11   remand for an award of benefits.   The Commissioner argues that the ALJ's decision is

12   supported by substantial evidence and should be affirmed.

13                                                 Medical Opinions

14   In general, more weight should be given to the opinion of a treating physician than to a

15   non-treating physician, and more weight to the opinion of an examining physician than to a

16   non-examining physician.   *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).   Where not

17   contradicted by another physician, a treating or examining physician's opinion may be rejected

18   only for "'clear and convincing'" reasons.   *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

19   1396 (9th Cir. 1991)).   Where contradicted, a treating or examining physician's opinion may

20   not be rejected without "'specific and legitimate reasons' supported by substantial evidence in

21   the record for so doing."   *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

22   1983)).

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01    "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that

02    justifies the rejection of the opinion of either an examining physician or a treating physician."

03    *Id*. at 831 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) and *Gallant v.*

04    *Heckler,* 753 F.2d 1450, 1456 (9th Cir. 1984)).   However, "the report of a nonexamining,

05    nontreating physician need not be discounted when it 'is not contradicted by *all other evidence*

06    in the record.'" *Andrews v. Shalala*, 53 F.3d 1035, 1041(9th Cir.1995) (quoting *Magallanes*,

07    881 F.2d at 752 (emphasis in original)).

08         The ALJ may reject physicians' opinions "by setting out a detailed and thorough

09    summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

10    making findings."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*,

11    881 F.2d at 751).   Rather than merely stating his conclusions, the ALJ "must set forth his own

12    interpretations and explain why they, rather than the doctors', are correct."   *Id*.  (citing

13    *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

14         "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of

15    a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*,

16    81 F.3d at 830-34 (finding that, if doctors' opinions and plaintiff's testimony were credited as

17    true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th

18    Cir. 1989)).   Crediting an opinion as a matter of law is appropriate when, taking that opinion as

19    true, the evidence supports a finding of disability.  *See*, *e.g.*, *Schneider v. Commissioner of*

20    *Social Sec. Admin.*, 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ

21    rejected is given the effect required by the federal regulations, it becomes clear that the severity

22    of [plaintiff's] functional limitations is sufficient to meet or equal [a listing.]"); *Smolen v.*

01  *Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996) (ALJ's reasoning for rejecting subjective symptom

02  testimony, physicians' opinions, and lay testimony legally insufficient; finding record fully

03  developed and disability finding clearly required).

04       However, courts retain flexibility in applying this "'crediting as true' theory." *Connett*

05  *v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where

06  there were insufficient findings as to whether plaintiff's testimony should be credited as true).

07  As stated by one district court: "In some cases, automatic reversal would bestow a benefits

08  windfall upon an undeserving, able claimant." *Barbato v. Commissioner of Soc. Sec. Admin.*,

09  923 F. Supp. 1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ

10  made a good faith error, in that some of his stated reasons for rejecting a physician's opinion

11  were legally insufficient).

12  A.    Examining and Non-examining Physicians

13       Plaintiff challenges the ALJ's assessment of opinions from consultative examiner Dr.

14  Peter Moore and non-examining psychologist Dr. Alex Fisher.   She points to Social Security

15  Ruling (SSR) 96-5p as providing that "adjudicators must always carefully consider medical

16  source opinions about any issue, including opinions about issues that are reserved to the

17  Commissioner[,]" and that such opinions "must never be ignored."  *See also* SSR 96-8p ("The

18  RFC assessment must always consider and address medical source opinions.") and SSR 96-6p

19  (opinions of State agency physicians and psychologists must be considered).   Plaintiff asserts

20  that an ALJ is prohibited from "cherry picking" the evidence by only accepting the portions of

21  medical opinions supportive of the ALJ's conclusions.  *See*, *e.g.*, *Gallant*, 753 F.2d at 1455-56

22  (ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent

01  evidence in the record that suggests an opposite result.") (cited source omitted).   She argues

02  that, given the errors in relation to examining physician Dr. Moore, the omitted opinions from

03  this physician must be created as true.

04          Dr. Moore examined plaintiff in October 2006.   (AR 308-10.)   The ALJ assessed Dr.

05  Moore's opinions as follows:

06          . . . Dr. Moore opined that the claimant could understand and follow simple
                directions without difficulty and moderately complex instructions with some
07              difficulty.   Dr. Moore indicated the claimant's anxiety would interfere with her
                ability to interact appropriately with others and she would likely have
08              considerable difficulty responding to work pressures or changes in her routine.
                Although Dr. Moore indicated the claimant's anxiety would interfere with her
09              ability to interact appropriately with others and with her ability to respond to
                work pressures or changes in her routine, he did not indicate that these abilities
10              were precluded.   Dr. Moore's opinions are consistent with the objective
                evidence of record as well as the claimant's own reports of her daily activities.
11              Accordingly, the undersigned gives Dr. Moore's opinions great weight.

12  (AR 16-17; internal citation to record omitted.)

13          Plaintiff contends the ALJ inappropriately cherry picked the evidence from Dr. Moore,

14  essentially ignoring his opinions as related to her ability to interact with others and withstand

15  work pressures and changes.   She asserts that a person whose anxiety interferes with her ability

16  to interact with others is effectively precluding from interacting with others, while a person who

17  would have considerable difficulty responding to work pressures and changes would need to

18  avoid such situations in the work place.   Plaintiff also asserts that the ALJ failed to address Dr.

19  Moore's observations that "when calm, she can mentally manipulate information and recall

20  material for brief periods[,]" and that her anxiety will "make her ability to persist at tasks,

21  especially those requiring sustained concentration[,] quite variable[.]"   (AR 310.)   Plaintiff

22  takes note of the fact that Dr. Moore never opined that she could return to work, assessed her

01    prognosis as only fair, and opined that "[h]er current cognitive problems are at least in part

02    psychologically based[,]" while noting various factors, such as an abusive upbringing, loss of

03    her business, the deaths of her sister and mother, and her health issues.   (*Id.*)

04        The Commissioner denies the allegation of cherry picking, pointing to the ALJ's

05    extensive discussion of Dr. Moore's observations and findings throughout the decision.   (AR

06    11-13.)   (*See also* Dkt. 13 at 8-9 (documenting each mention of Dr. Moore's observations and

07    findings in the ALJ's decision).)   The Commissioner observes that, for example, in addition to

08    Dr. Moore's findings with respect to plaintiff's anxiety, the ALJ took note of Dr. Moore's

09    finding that plaintiff had a Global Assessment of Functioning (GAF) of 55, suggesting

10    moderate symptoms.   The Commissioner stresses that an ALJ need not discuss all the evidence

11    presented, so long as he explains why "significant probative evidence has been rejected." *See*

12    *generally Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citing *Cotter v. Harris*,

13    642 F.2d 700, 706 (3d Cir. 1981)).   He argues that plaintiff inappropriately reads Dr. Moore's

14    use of the term "interfere" as meaning "preclude," and asserts that Dr. Moore merely found

15    plaintiff's abilities in interacting with others and withstanding work pressures and changes

16    hindered, not precluded.

17        Dr. Fisher, a State agency reviewing psychologist, assessed plaintiff in October 2006.

18    (AR 313-30.)   The ALJ considered Dr. Fisher's opinions as follows:

19        [Dr. Fisher] opined that the claimant was able to complete simple instructions
          and could perform complex tasks, but indicated her anxiety would interfere
20        somewhat with her ability to sustain concentration, persistence and pace.   Dr.
          Fisher further opined that the claimant was likely to have some trouble
21        responding to work pressures or routine changes.   Although Dr. Fisher did not
          examine the claimant, and therefore his opinions do not as a general matter
22        deserve as much weight as those of examining or treating physicians, those

01  opinions do deserve some weight, particularly in a case like this in which there
exist a number of other reasons to reach similar conclusions (as explained
02  throughout this decision).   It should also be noted that Dr. Fisher reviewed the
medical evidence objectively, and would be unlikely to be sympathetic or
03  prejudiced toward the interests of the claimant.   For all of these reasons,
substantial weight has been given to the determinations [of] Dr. Fisher.

04

05  (AR 17; internal citation to record omitted.)

06       Plaintiff notes that, like Dr. Moore, Dr. Fisher did not opine that she could return to

07  work.  She asserts that the ALJ failed to address a number of Dr. Fisher's opinions.  She

08  points to, *inter alia*, Dr. Fisher's findings of a variety of "moderate" limitations in work-related

09  functions, his observation that she could "perform complex tasks with some difficulty[,]" that

10  her "anxiety will interfere somewhat with her ability to sustain CPP [concentration, persistence,

11  and pace], and that she is "[l]ikely to have some trouble responding appropriately to work

12  pressures or routine changes."   (AR 313-15.)

13       The Commissioner notes that the ALJ acknowledged the limitations assessed by Dr.

14  Fisher.  (AR 17.)  He concedes that the ALJ failed to add the qualifying words, "with some

15  difficulty" (AR 315), to Dr. Fisher's opinion with regard to complex tasks, but contends this

16  omission was harmless given the limitation to unskilled work and the acknowledgment of Dr.

17  Moore's similar finding (AR 14, 16).   *See Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d

18  1050, 1055 (9th Cir. 2006) (recognizing application of harmless error in Social Security context

19  where a "mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate

20  disability conclusion.")   The Commissioner further notes that the findings from Dr. Fisher

21  highlighted by the ALJ came from Dr. Fisher's narrative summary.  Finally, in regard to

22  plaintiff's observation that neither Dr. Fisher, nor Dr. Moore opined that plaintiff could return

01 to work, the Commissioner notes that neither physician opined that plaintiff could *not* return to

02 work and that, in any event, the decisions as to a claimant's RFC and ability to work are

03 reserved to the Commissioner.   SSR 96-5p.

04   Plaintiff's focus on the absence of an express opinion from these physicians that she

05 could return to work is unavailing.   "Disability," for the purposes of the Social Security Act, is

06 a vocational concept based on a medical foundation.   *See generally* 20 C.F.R. §§ 404.1505(a),

07 416.905(a) ("The law defines disability as the inability to do any substantial gainful activity by

08 reason of any medically determinable physical or mental impairment . . . which has lasted or

09 can be expected to last for a continuous period of not less than 12 months.")   It is beyond a

10 physician's expertise to say whether or not a claimant seeking disability benefits can or cannot

11 work.   §§ 404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or

12 decision about whether you meet the statutory definition of disability. In so doing, we review all

13 of the medical findings and other evidence that support a medical source's statement that you

14 are disabled. A statement by a medical source that you are 'disabled' or 'unable to work' does

15 not mean that we will determine that you are disabled."); SSR 96-5p (medical source opinions

16 as to whether someone is "'disabled' or 'unable to work'" cannot be disregarded, but are not

17 "entitled to controlling weight or [to be] given special significance" since those determinations

18 are reserved the Commissioner).

19   However, plaintiff does identify reversible error in the ALJ's assessment of the opinions

20 of Drs. Moore and Fisher.   Dr. Moore found that plaintiff's anxiety would interfere with her

21 ability to interact appropriately with others, while Dr. Fisher, in discussing social interaction,

22 found that plaintiff's "anxiety increases in unfamiliar environments[,]" that she "can be

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01  tangential and mildly inappropriate[,]" but was "pleasant and cooperative with logical and

02  coherent speech once she relaxed during the interview."  (AR 310.)[3]  Both Drs. Moore and

03  Fisher opined that plaintiff's anxiety would interfere with or cause difficulty in her ability to

04  respond to work pressures or changes, and her abilities in relation to concentration, persistence,

05  and/or pace.  (AR 310, 315.)  Likewise, both physicians identified difficulties with complex

06  or detailed instructions.  (*Id*.)

07       The ALJ acknowledged most of the physicians' findings, accorded their opinions great

08  and substantial weight, but failed to account for any assessed limitations in the RFC or, in all

09  but one respect, to distinguish the jobs identified at step five as not requiring skills in the areas

10  in question.   The ALJ did, at step five, state that "the jobs identified by the vocational expert

11  generally do not require frequent contact with coworkers or the general public[,]" and

12  concluded that, "[t]herefore, any impairment in inability to interact with others would not

13  preclude plaintiff from performing the jobs identified by the vocational expert." (AR 18.)

14  However, there is no testimony from the vocational expert on this issue.  (*See* AR 50-52.)

15  Also, while the limitation to unskilled work may account for the physicians' opinions as to

16  complex or detailed instructions, both of the jobs identified at step five require level two

17  "reasoning development," which is defined as the ability to: "Apply commonsense

18  understanding to carry out *detailed but uninvolved* written or oral instructions.  Deal with

19  problems involving a few concrete variables in or from standardized situations."   Dictionary of

20  Occupational Titles (DOT), App. C (emphasis added).

21       3 Dr. Fisher identified moderate limitations in social interactions and functioning in the "check box"
    portions of forms completed.  (AR 314, 327.)  However, an ALJ properly focuses on the narrative portion of the
22  Mental RFC Assessment (MRFCA) form (AR 315), rather than check boxes on the form.  *See* Program
    Operations Manual System (POMS) DI 25020.010 at B.1.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01      The Commissioner correctly avers that opinions as to difficulties or interferences

02  should not be read to mean that an individual is precluded from working due to such limitations.

03  However, the ALJ in this case erred in not either accounting for the difficulties or interferences

04  assessed or in providing sufficient reasoning for the decision to reject the opinions as to those

05  assessments.   In sum, the ALJ failed to explain why significant probative evidence had

06  apparently been rejected.   *See Vincent*, 739 F.2d at 1394-95.

07      At the same time, plaintiff fails to establish that the record supports crediting examining

08  physician Dr. Moore's opinions as true.   That is, plaintiff does not establish that, by crediting

09  as true Dr. Moore's opinions as to her difficulties with or interferences in relation to work

10  functions, the evidence supports a finding of disability.   *See*, *e.g.*, *Schneider*, 223 F.3d at 976;

11  *Smolen*, 80 F.3d at 1292.   Instead, the ALJ should be required to reconsider both Dr. Moore's

12  and Dr. Fisher's opinions on remand.

13  B.   Treating Physicians

14      Plaintiff challenges the ALJ's decision to give little weight to opinions from her treating

15  physicians, Drs. LuAnn Chen and Mary Bartels, rendered in March and November 2006

16  respectively.   (AR 202-03, 372-73.)   The ALJ's consideration of these opinions reads as

17  follows:

18      In a March 16, 2006 statement, Dr. Chen opined that due to the claimant's
    severe depression and posttraumatic stress disorder, the claimant could not
19      perform full time job search activities, part time job search activities, full time
    employment, or part time employment.

20
    In a November 30, 2006 statement, Mary Bartels, M.D., indicated that the
21      claimant's bipolar disorder limited her ability to work due to markedly
    diminished concentration and inability to interact appropriately with coworkers,
22      and opined that the claimant was completely unable to work permanently.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01

02      It would appear that Dr. Chen and Dr. Bartels relied quite heavily on the
       subjective report of symptoms and limitations provided by the claimant, and
       seemed to uncritically accept as true most, if not all, of what the claimant
03      reported.  Yet, as explained above and elsewhere in this decision, objective
       medical findings do not support the extent of limitation alleged by the claimant.
04      For these reasons, the undersigned gives little weight to the opinions of Dr. Chen
       and Dr. Bartels.

05

06  (AR 16; internal citations to record omitted.)

07      Plaintiff asserts that the ALJ erred in rejecting his treating physicians' opinions where

08  there is no evidence they uncritically accepted her complaints, and both physicians referenced

09  their observation of signs, as opposed to reported symptoms, of her mental impairments.  *Ryan*

10  *v. Comm'r of Soc. Sec*., 528 F.3d 1194, 1199-1200 (9th Cir. 2008) ("An ALJ may reject an

11  examining physician's opinion if it is contradicted by clinical evidence. . . . But an ALJ does not

12  provide clear and convincing reasons for rejecting an examining physician's opinion by

13  questioning the credibility of the patient's complaints where the doctor does not discredit those

14  complaints and supports his ultimate opinion with his own observations."; finding nothing in

15  the record suggesting physician disbelieved claimant's description of symptoms or relied on

16  those descriptions more heavily than his own clinical observations) (cited sources omitted).

17  She points to a variety of signs identified by these physicians.  (*See* AR 374 (Dr. Bartels noted,

18  on November 16, 2006, that plaintiff was "rambling, irritable, circumstantial and labile on the

19  phone."); AR 213 (Dr. Bartels, on June 28, 2006, observed that plaintiff was "slightly unkempt;

20  rambling; not as pressured; illogical; labile; dysphoric; grandiose[.]"); AR 217 (in a May 31,

21  2006 evaluation, Dr. Bartels observed rapid, loud, and pressured speech, labile effect,

22  dysphoric mood, and circumstantial thought process, and described plaintiff as presenting in a

01    "dysphoric state with many manic symptoms."); and AR 402 (on October 8, 2007, Dr. Chen

02    noted, *inter alia*, that plaintiff was "less tangential than in the past[]" and that she had a

03    "[m]ildly depressed mood and affect[.]"))   (*See also* AR 385, 387, 391, 402 (Dr. Chen noted

04    diagnoses of insomnia and bipolar depression).)   Plaintiff describes her treating physicians'

05    opinions as uncontradicted and avers that, given the absence of clear and convincing reasons for

06    their rejection, the opinions should be credited as true.

07         The Commissioner denies that the opinions of Drs. Chen and Bartels were

08    uncontradicted, pointing to the opinions of Drs. Moore and Fisher.   The Commissioner further

09    denies that the ALJ rejected the opinions of Drs. Chen and Bartels, noting that the ALJ did find

10    plaintiff's anxiety, PTSD, and bipolar disorder severe, and asserts that the ALJ, instead, gave

11    little weight to the opinions of these physicians that plaintiff was unable to search for or hold a

12    job.   The Commissioner stresses that the ALJ is the final arbiter with respect to resolving

13    conflicts in the medical record, *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir.

14    2008), and that the decision as to a claimant's RFC and ability to work is one reserved to the

15    ALJ, SSR 96-5p.

16         Plaintiff's arguments as they relate to Dr. Chen are not persuasive.   Dr. Chen's March

17    2006 report containing an opinion as to plaintiff's inability to perform or search for

18    employment is a "check box" form lacking any significant discussion.   (AR 202-03.)[4]   "The

19    ALJ need not accept the opinion of any physician, including a treating physician, if that opinion

20    is brief, conclusory, and inadequately supported by clinical findings."   *Thomas*, 278 F.3d at

21    ─────────────
      4 As observed by the Commissioner, while the ALJ did not make a note of this fact and its consideration
    would be an improper post hoc rationalization, Dr. Chen indicated on the form that it could "not definitely be

22    determined" at that time whether she would recommend plaintiff pursue Social Security or other disability
    benefits, and stated:   "Should be determined after full psychiatric evaluation."   (AR 203.)

01   957.  *See also Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004) (a treating

02   physician's opinions may be discounted when it is "in the form of a checklist, did not have

03   supportive objective evidence, was contradicted by other statements and assessments of [the

04   claimant's condition], and was based on [the claimant's] subjective descriptions of pain[,]" as

05   well as when that opinion is "conclusory, brief, and unsupported by the record as a whole . . . or

06   by objective medical findings[.]")

07          The document relied on by plaintiff as reflecting Dr. Chen's observation of signs

08   supporting his opinions is dated *after* the March 2006 report containing those opinions.  (AR

09   402.)  Moreover, that document provides support for the ALJ's assessment of Dr. Chen's

10   opinions in describing plaintiff as *less* tangential and with only *mildly* depressed mood and

11   affect.  (*Id.*)  Plaintiff also neglects to note that Dr. Chen, at that time, also observed that

12   plaintiff had coherent speech and "normal mentation[,]" that she was alert and oriented, and

13   followed up the observation as to mildly depressed mood and affect by noting that plaintiff was

14   "more hopeful than in the past."  (*Id.*)  As asserted by the Commissioner, the only other

15   documents plaintiff cites in relation to Dr. Chen reflect plaintiff's history of diagnoses, rather

16   than the observation of any signs of her mental impairments.  (AR 385, 387, 391, 402.)  Also,

17   in addition to the specific reasoning offered in relation to Dr. Chen's March 2006 report, the

18   ALJ's credibility assessment cites a number of medical records from Dr. Chen reflecting

19   positive observations on plaintiff's mental health that contradict plaintiff's self assessment.

20   (AR 15.)  In sum, the ALJ offered sufficient reasons for rejecting Dr. Chen's March 2006

21   opinions as to plaintiff's inability to perform or search for work.

22          Plaintiff's argument with respect to Dr. Bartels is more compelling.  The November

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01   2006 report from Dr. Bartels addressed by the ALJ contains slightly more explanation than Dr.

02   Chen's March 2006 report.  (AR 372-73.)  More importantly, as argued by plaintiff, the

03   record reflects Dr. Bartels' observation of signs of plaintiff's mental impairments.  Two weeks

04   prior to the November 2006 report, Dr. Bartels described plaintiff as "rambling, irritable,

05   circumstantial and labile[.]" (AR 374.)  On June 28 2006, Dr. Bartels observed that plaintiff

06   was "slightly unkempt; rambling; not as pressured; illogical; labile; dysphoric; grandiose[.]"

07   (AR 213.)  In May 2006, Dr. Bartels observed rapid, loud, and pressured speech, labile effect,

08   dysphoric mood, and circumstantial thought process, and described plaintiff as presenting in a

09   "dysphoric state with many manic symptoms." (AR 217-18 (also stating:  "Ct. presented as

10   grandiose in addition to loud, pressured, labile, circumstantial with flight of ideas."))

11        The Commissioner unsuccessfully minimizes these observations by Dr. Bartels.  For

12   instance, the Commissioner notes that, in the May 2006 treatment note, Dr. Bartels indicated he

13   was starting plaintiff on a trial of Geodon, to be continued through her primary care provider,

14   and that Dr. Chen, on June 19, 2006, reported:  "Feels better on geodon.  Thoughts under

15   control.  Sleeping better.  Less depressed. . . . [S]table on geodon."  (AR 246-47.)  However,

16   shortly thereafter, on June 28, 2006, Dr. Bartels reflected that, while plaintiff initially felt

17   improvement on Geodon, she had tapered herself off the medication due to a variety of side

18   effects (things were racing too fast, heart was beating too fast, agitation, body slowing down,

19   nausea and vomiting), and Dr. Bartels observed the continued signs of mental impairment as

20   reflected above.  (AR 213.)  The Commissioner also distinguishes the early November 2006

21   observations of Dr. Bartels by noting that that same note reflects situational stressors, such as

22   plaintiff being flooded out of her apartment, and the fact that plaintiff was unable to get her

01   medications.  (AR 374.)  However, while true, these distinguishing factors do not negate the

02   fact that Dr. Bartels did in this instance and previously observe signs of plaintiff's mental

03   impairments.  Nor did Dr. Bartels say that plaintiff's symptoms would improve when the

04   situational stressors subsided.

05        "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a

06   claimant's self-reports that have been properly discounted as incredible. *Tommasetti v. Astrue*,

07   533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d

08   595, 602 (9th Cir. 1999) (citing *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989))).  In this

09   case, the ALJ gave little weight to the opinions of Drs. Chen and Bartels upon concluding that

10   they relied "quite heavily" on plaintiff's reports of her symptoms and limitations, and that the

11   objective medical findings in the record did not support the extent of limitation alleged.  (AR

12   16.)  It should be noted that the ALJ did not ignore the observation of signs by Dr. Bartels and,

13   in fact, described the May 2006 observations in detail.  (AR 11.)  Nor did he necessarily err in

14   concluding that Dr. Bartels' opinions appear to have been based, in part, on plaintiff's

15   subjective reporting of her symptoms.  However, given that the record contains several

16   different treatment notes confirming Dr. Bartels' consideration of objective signs of

17   impairment, the ALJ's explanation with respect to Dr. Bartels is deficient.

18        Yet, as with Dr. Moore, plaintiff fails to establish that Dr. Bartels' opinions should be

19   credited as true.  While the ALJ's explanation for his rejection of Dr. Bartel's opinions is

20   lacking, his finding is not wholly without support.  *See*, *e.g.*, *Barbato*, 923 F. Supp. at 1278.

21   Nor is it clear that the record is fully developed and a disability finding clearly required.  *See*,

22   *e.g.*, *Smolen*, 80 F.3d at 1292.  Accordingly, the ALJ should be required to reconsider Dr.

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01 Bartels' opinions on remand.

02                                      <u>Credibility</u>

03         Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

04 reject a claimant's testimony.  *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

05 *See also Thomas*, 278 F.3d at 958-59.   In finding a social security claimant's testimony

06 unreliable, an ALJ must render a credibility determination with sufficiently specific findings,

07 supported by substantial evidence.  "General findings are insufficient; rather, the ALJ must

08 identify what testimony is not credible and what evidence undermines the claimant's

09 complaints."  *Lester*, 81 F.3d at 834.  "We require the ALJ to build an accurate and logical

10 bridge from the evidence to her conclusions so that we may afford the claimant meaningful

11 review of the SSA's ultimate findings."  *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

12 "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness,

13 inconsistencies either in his testimony or between his testimony and his conduct, his daily

14 activities, his work record, and testimony from physicians and third parties concerning the

15 nature, severity, and effect of the symptoms of which he complains."  *Light v. Social Sec.*

16 *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

17         In this case, the ALJ found that, while her impairments could reasonably be expected to

18 cause some of the symptoms alleged, plaintiff's statements concerning the intensity,

19 persistence, and limiting effects of her symptoms were not credible to the extent inconsistent

20 with the assessed RFC.  (AR 15.)   The ALJ explained her conclusion as follows:

21         The overall record and objective medical evidence do not support the alleged
           severity of the claimant's symptoms and limitations due to her impairments.
22         Treatment notes dated 2004 to 2006 from Swedish Physicians Pine Lake

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

01   indicated that the claimant was depressed in 2003 following a house fire, but the
02   depression was successfully treated with Effexor.   At an evaluation at Swedish
     Physicians Pine Lake on September 30, 2003, the claimant reported her mood
03   continued to do well, she was exercising and eating healthy, she was attending a
     church group, and she felt she was in control; the treating health care provider
04   indicated the claimant's major depressive disorder/mixed anxiety was
     responding well to current treatment.   At a June 19, 2006 examination with Dr.
05   Chen, the claimant reported she felt better on Geodon, her thoughts were under
     control, she was sleeping better, and she was less depressed; Dr. Chen indicated
     the claimant's bipolar depression was stable on Geodon.   At an April 13, 2006
06   examination with Dr. Chen, the claimant reported her depression and bipolar
     disorder were much better and she had quit taking Effexor and Depakote.
07
     As noted above, at the October 2006 evaluation with Dr. Moore, the claimant
08   was able to spell the word *world* forward and backward, could subtract nine
     from 16, could recite the days of the week and months of the year backward,
09   could immediately recall 3/3 words and 2/3 words after five minutes, and was
     able to recall eight digits forward and three digits backward; Dr. Moore
10   indicated the claimant's level of intellectual functioning was estimated to be in
     the average range.   Dr. Moore also noted that although the claimant was
11   receptive to and had had a positive therapeutic experience in the past, she was
     not receiving psychotherapy at the time of the evaluation, which further
12   undermines the claimant's credibility regarding her symptoms and limitations.
     In treatment notes from Dr. Chen dated October 2007 to November 2007, the
13   claimant reported she traveled to California for three months, went to NASCAR,
     and got a job working as a bartender.   Treatment notes from Sound Mental
14   Health dated June 2007 to February 2008 indicate the claimant traveled by train
     from Washington to California with her daughter, and handled the experience
15   well.

16   Additionally, in spite of the claimant's testimony that she could not fulfill her
     obligations in her job as a bartender and in her teaching position with Sound
17   Mental Health, the record does not support those allegations.   In December
     2007, the claimant indicated she began working as a bartender four nights per
18   week.   In addition to bartending, she also closed the bar at night including the
     cash out and the physical lockup of the building.   Records indicate her boss told
19   her she was "doing the best job of all the bartenders."   The treating healthcare
     provider indicated the claimant's stressors were socioeconomic and family
20   issues; she consistently indicated that the claimant was "doing well" and her
     mood was stable with treatment.
21
     As noted above and throughout this decision, the claimant reported a range of
22   activities which is inconsistent with the alleged severity of her impairments.   In

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -19

01   a February 10, 2007 Function Report, the claimant reported she was able to take
      her daughter to and from school, attend medical appointments, attend evening
02   recovery classes, exercise, bathe, walk her dog, and help her daughter with
      homework.   The claimant indicated she went out daily to appointments, classes,
03   school, and shopping; spent time with others; had never been fired from a job
      due to inability to get along with others; and had no problems getting along with
04   family, friends, neighbors, or authority figures.   As of August 2008, claimant
      was exercising daily on a treadmill; involved in self-meditation; feeling better
05   mentally using supplements; and teaching a wellness class at Seattle Mental
      Health as a co-facilitator.

06

07   (AR 15-17; internal citations to record omitted.)   After summarizing the medical opinions, the

08   ALJ concluded that plaintiff was capable of unskilled work and that, while she did have some

09   mental limitations, the objective medical record did not support the limitations alleged.   (AR

10   17.)

11          Plaintiff argues that the ALJ failed to supply clear and convincing reasons for rejecting

12   her testimony.   She first takes issue with the ALJ's reliance on the fact that she was not in

13   therapy, pointing to reasoning from the Ninth Circuit: "[I]t is common knowledge that

14   depression is one of the most underreported illnesses in the country because those afflicted

15   often do not recognize that their condition reflects a potentially serious mental illness."; "'[I]t is

16   a questionable practice to chastise one with a mental impairment for the exercise of poor

17   judgment in seeking rehabilitation.'" *Van Nguyen v. Chater* 100 F.3d 1462 (9th Cir. 1996)

18   (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)).   Plaintiff notes that Dr.

19   Moore did not find the absence of therapy to undermine her credibility, that it is unclear why

20   she was not receiving therapy, and that she was receiving treatment from her treating

21   physicians.

22          Plaintiff next criticizes the ALJ's comments with respect to her work attempts.   She

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -20

01  notes her explanation during the hearing that the statement from her boss probably occurred "on

02  one good weekend" and reflected her excitement about receiving good feedback, and that the

03  ALJ failed to take note of the fact that she was fired from that job after only three months due to

04  her failure to follow closing procedures.  (AR 34, 48.)  Plaintiff clarifies that she volunteered

05  as a teacher's assistant, not a teacher, and avers a lack of any evidence to contradict her

06  testimony that she could not successfully perform in that position.  (AR 35-36.)

07         Plaintiff asserts that the observation that her "stressors were socioeconomic and family

08  issues[]" (AR 16) does not negate her diagnosed depression and bipolar disorder, or her

09  reactions to her stressors.   She also takes issue with the ALJ's reliance on observations that she

10  was "'doing well'" and had a stable mood, pointing to case law recognizing that periods of

11  improvement are not inconsistent with disability.   *See*, *e.g.*, *Lester*, 81 F.3d at 833

12  ("Occasional symptom-free periods - and even the sporadic ability to work - are not

13  inconsistent with disability."); *Hutsell v. Massanari*, 259 F.3d 707, 712-13 (8th Cir. 2001)

14  (finding Commissioner erred in relying "too heavily on indications in the medical record that

15  [the claimant] was 'doing well,' 'because doing well for the purposes of a treatment program

16  has no necessary relation to a claimant's ability to work or to her work-related functional

17  capacity.'"; given continuing treatment and physicians' conclusions that the claimant's work

18  skills were seriously deficient, "'doing well' as a chronic schizophrenic [was] not inconsistent

19  with a finding of disability.") (internal citations omitted).   Plaintiff also notes the recognition

20  that "the mere fact that a plaintiff has carried on certain daily activities, such as grocery

21  shopping, driving a car, or limited walking for exercise, does not in any way detract from her

22  credibility as to her overall disability.   One does not need to be 'utterly incapacitated' in order

01   to be disabled."  *Vertigan*, 260 F.3d at 1049 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th

02   Cir. 1989) ("Many home activities are not easily transferable to . . . the more grueling

03   environment of the workplace, where it might be impossible to periodically rest or take

04   medication."))  *See also Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999) (road trip to

05   California not sufficient to counter physicians' opinions that claimant needed to shift positions

06   every thirty minutes or so, where there was an absence of information as to his positioning in

07   the car and the frequency and duration of rest stops).

08       Plaintiff appropriately criticizes the ALJ's statements regarding her bartending and

09   teaching positions.  The ALJ did not fully reflect plaintiff's testimony with respect to either

10   position.  (*See* AR 33-38, 48.)  Of particular note is the fact that the ALJ relied on a single

11   comment from a treatment note, while ignoring the uncontested testimony that plaintiff was

12   fired from the job after three months due to her inability to perform.   In fact, one month after

13   the note reflecting the comment from her boss, plaintiff reported continued stress due to, in part,

14   the bartending job.  (AR 451-52.)   However, as argued by the Commissioner, the ALJ's

15   remaining reasons for the credibility assessment withstand scrutiny.

16       Plaintiff does not directly dispute the ALJ's finding that the record overall and the

17   objective medical evidence do not support the alleged severity of her symptoms and limitations.

18   "Contradiction with the medical record is a sufficient basis for rejecting the claimant's

19   subjective testimony." *Carmickle*, 533 F.3d at 1161.5  Also, an ALJ appropriately considers

20   inconsistencies or contradictions between a claimant's statements and her activities of daily

21

22       5 The ALJ's reliance on Dr. Chen's observation of plaintiff's improvement on Geodon, however, is
    undermined by the subsequent treatment notes from Dr. Bartels.   (*See supra* at 16.)

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -22

01   living.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Thomas*, 278 F.3d at

02   958-59.  The activities relied on by the ALJ in this case, including taking and picking up

03   plaintiff's daughter from school, attending appointments and classes, exercising, bathing,

04   walking her dog, helping her daughter with homework, daily excursions for appointments and

05   shopping, spending time with others, self-meditation, and co-facilitating a class, do not support

06   a conclusion that the ALJ expected plaintiff to be "'utterly incapacitated.'"  *Vertigan*, 260 F.3d

07   at 1049.

08          Additionally, an ALJ appropriately considers an unexplained or inadequately explained

09   failure to seek treatment or follow a prescribed course of treatment.  *Tommasetti*, 533 F.3d at

10   1039 (ALJ permissibly inferred that the claimant's pain was not as disabling as alleged "in light

11   of the fact that he did not seek an aggressive treatment program and did not seek an alternative

12   or more-tailored treatment program after he stopped taking an effective medication due to mild

13   side effects.")  *See also* SSR 96-7p ("[T]he individual's statements may be less credible . . .  if

14   the medical reports or records show that the individual is not following the treatment as

15   prescribed and there are no good reasons for this failure.")   As conceded by plaintiff, there was

16   no indication as to why she was not receiving therapy.

17          Given the existence of other valid reasons for the ALJ's decision, any error as it relates

18   to plaintiff's bartending and teaching experiences can be deemed harmless.  *Carmickle*, 533

19   F.3d at 1162-63.  However, because the ALJ's credibility assessment may be implicated by

20   reassessment of physicians' opinions, the ALJ should also reconsider plaintiff's credibility as

21   necessary on remand.

22   / / /

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -23

01                                          <u>Step Four</u>

02          At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and

03   assess her work-related abilities on a function-by-function basis, including a narrative

04   discussion.   *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p.   RFC is the most a claimant can

05   do considering his or her limitations or restrictions on a regular and continuous basis, meaning

06   eight hours a day, five days a week, or an equivalent work schedule.   SSR 96-8p.

07          Plaintiff argues that the ALJ failed to follow the mandatory requirements of SSR 96-8p

08   in determining her RFC.   She asserts error in the failure to consider all of the medical opinions,

09   by minimizing the opinions of Drs. Moore and Fisher and by rejecting the opinions of Drs.

10   Chen and Bartels.   Plaintiff also asserts that the ALJ erred in failing to consider the opinions of

11   her therapists, "other sources" whose opinions must be considered, *see* 20 C.F.R. §§

12   404.1513(a) and (e), 416.913(a) and (e), and SSR 06-03p.   She points in particular to an April

13   3, 2008 assessment noting the continuation of her depressive symptoms and a recent breast

14   cancer diagnosis.   (AR 446-49; *see also* AR 215-34, 453.)   Finally, plaintiff notes multiple

15   references in the record to her inability to react appropriately to change or stress (*see* AR 231,

16   310, 314), and asserts that the ALJ failed to properly address the issue of stress, contrary to SSR

17   85-15 (discussing association between stress and mental illness and stating: "Any

18   impairment-related limitations created by an individual's response to demands of work,

19   however, must be reflected in the RFC assessment.")

20          Because the ALJ erred in his assessment of the opinions of Drs. Moore, Fisher, and

21   Bartels, the RFC assessment may be implicated and should be reassessed as needed on remand.

22   This reassessment would include opinions reflecting limitations related to stress.   Plaintiff

01  does not otherwise, however, establish that the ALJ erred in relation to the consideration of the

02  issue of stress.

03      Plaintiff's argument as it relates to the consideration of opinions from other sources is

04  less clear.   The Commissioner notes that the ALJ cited the majority of records highlighted by

05  plaintiff here.   (*See* AR 11-13 and Dkt. 13 at 19.)   He does not address the April 2008

06  assessment specifically discussed by plaintiff.   The strength of plaintiff's argument is unclear

07  given the lack of details provided.   She fails to discuss, for example, the identities of the other

08  sources at issue and the nature and length of her relationships with those individuals.   Also, as

09  noted by the Commissioner, it does appear that the ALJ considered many of the records at issue.

10  In any event, because this matter should be remanded for the reasons described above, the ALJ

11  should also consider whether the record contains opinions from other sources that must be

12  considered.

13                                                    Step Five

14      Plaintiff argues that, given the deficient RFC, the ALJ's hypothetical to the vocational

15  expert (VE) and her resulting step five decision, relying on the VE's testimony, lacks the

16  support of substantial evidence.   *Lewis v. Apfel*, 236 F.3d 503, 517-18 (9th Cir. 2001)

17  ("Hypothetical questions asked of the vocational expert must 'set out all of the claimant's

18  impairments.'   If the record does not support the assumptions in the hypothetical, the

19  vocational expert's opinion has no evidentiary value.") (quoting *Gamer v. Secretary of Health*

20  *and Human Servs.*, 815 F.2d 1275, 1278-79 (9th Cir. 1987)).   Plaintiff also asserts error in that

21  the VE did not identify the number of jobs available by region.   20 C.F.R. § 404.1560(c)(1)

22  ("Any other work (jobs) that you can adjust to must exist in significant numbers in the national

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -25

01 economy (either in the region where you live or in several regions in the country)."); 20 C.F.R.

02 § 404.1566(a) ("We consider that work exists in the national economy when it exists in

03 significant numbers either in the region where you live or in several other regions of the

04 country."); SSR 83-14 (where a "vocational resource is used" the ALJ's decision must include,

05 *inter alia*, "a statement of the incidence of such work in the region in which the individual

06 resides or in several regions of the country."); SSR 83-12 (same).

07       As with the ALJ's step four decision, the deficiencies discussed above may implicate

08 the ALJ's step five decision.   The ALJ should, therefore, reconsider this step as necessary on

09 remand.

10       The Commissioner concedes error in the failure to identify regional job numbers, but

11 maintains that it was harmless given the vast numbers of the identified jobs nationally,

12 including over 1,000,000 janitor jobs and "well over" 100,000 production assembler jobs.

13 (AR 51-52.)   None of the case law cited by the Commissioner directly supports this

14 proposition.  *See Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 577-78

15 (9th Cir. 1988) (Pregerson, J., concurring) ("The 'other work' must be available in the national

16 economy in 'significant numbers,' but the opportunities may lie either in the region where the

17 claimant lives or in several other regions in the country[.]") (quoting and citing 20 C.F.R. §§

18 404.1560(b)(3) and 404.1566(a)); *Martinez v. Heckler*, 807 F.2d 771, 774-75 (9th Cir. 1987)

19 (3,750 to 4,250 jobs in greater metropolitan Los Angeles and Orange County identified).

20 While it is not clear whether this omission standing alone would constitute reversible error, the

21 ALJ in this case, on remand, should include regional job numbers at step five.

22 / / /

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -26

01 **<u>CONCLUSION</u>**

02        For the reasons set forth above, this matter should be REMANDED for further

03 administrative proceedings.    A proposed order accompanies this Report and Recommendation.

04        DATED this <u>4th</u> day of June, 2010.

05

06                                                                    _____

07                                                                    Mary Alice Theiler
                                                                      United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22